**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES A. JOHNSON, individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>LANGER TANSPORT CORPORATION,<br><br>Defendant. | Civil Action No. 15-1256 (JLL) (JAD)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Langer Transport Company ("Defendant")' motion to dismiss Plaintiff Charles A. Johnson ("Plaintiff")'s Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 6). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

### I. BACKGROUND[1]

Plaintiff, a New York resident and truck driver, began working for Defendant on February 12, 2012. (Comp. at ¶ 4-6). Defendant is a New Jersey Distribution Company that facilitates the intrastate and interstate transportation of chemicals. (*Id.* at ¶¶ 9-10). Defendant allegedly promised to compensate Plaintiff no less than $23.76 per hour for all hours worked in a

---

[1] The following is taken as true solely for the purposes of this motion.

workweek. (*Id.* at ¶ 35). For each day that Plaintiff did not have a trip scheduled, he was required to work for at least eight hours at Langer Transport Corp. headquarters, at a rate of $23.76 per hour. (*Id.* at ¶ 36). Plaintiff was also promised certain premium pay when he performed trips where the round trip was would be in excess of 190 miles. (*Id.* at ¶ 37). Defendant was also to compensate Plaintiff at a rate of $23.76 per hour for time spent preparing for trips, loading and unloading cargo, and performing maintenance upon his return from trips. (*Id.* at ¶ 38). Accordingly, in a workweek where he did not perform any trips that were in excess of 190 miles, Plaintiff was required to be paid overtime, for every hour he worked over 40 in a workweek, at a rate of $35.64. (*Id.* at ¶ 39).

Despite this, Plaintiff alleges that Defendant routinely and systematically failed, and continue to fail to pay Plaintiffs their earned and owed regular and overtime wages. (*Id.* at ¶ 42). For example, when Plaintiff affirmatively requested payment for five hours worked (as reflected in both Langer Transport Corp.'s and his own records), he was only compensated for two hours of work. (*Id.* at ¶ 44). Plaintiff contends that Defendant knowingly and intentionally failed to accurately record all hours worked by Plaintiffs. (*Id.* at 47). Defendant never provided Plaintiffs with information regarding their right to receive overtime compensation under the New Jersey Wage and Hour Law, New Jersey Administrative Code, and the Fair Labor Standards Act. (*Id.* at ¶¶ 56-69).

As a result of Defendant repeatedly failing to pay Plaintiff his earned and due regular and overtime wages, Plaintiff frequently confronted Defendant about its problematic pay practices in an attempt to receive his earned and owed compensation. (*Id.* at ¶ 71). On October 6, 2014, Plaintiff confronted Steve Wunderbaum [sic], a Langer Transport Corp. accountant, and Evin Katt [sic], a Langer Transport Corp. dispatcher, about Defendant's failure to compensate him for

approximately forty five hours of work. (*Id.* at ¶ 73). Katt responded to Plaintiff's confrontation by allegedly assaulting Plaintiff. (*Id.* at ¶ 74). Plaintiff alleges that as retaliation for the incident, his employment with Defendant was terminated on October 6, 2014. (*Id.* at ¶¶ 7, 75). Plaintiff asserts the following Counts against Defendant: (1) Violation of the New Jersey Wage and Hour Law ("NJWHL"); (2) Unpaid Wages—Violation of the New Jersey Administrative Code; (3) Breach Of Contract; (4) Unjust Enrichment; and (5) Retaliatory Termination.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.2007). "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Id.* "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Focus v. Alleghen y Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) "When standing is challenged on the basis of the pleadings, [courts must] accept as true all material allegations in the complaint, and ... construe the complaint in favor of the complaining party." *Id.* (*quoting Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)). However, when the challenging party presents a factual challenge, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Petruska v. Gannon Univ.*, 462 F.3d 204, 302 n. 3 (3d Cir.2006).

In considering a factual attack on a 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations," and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at n. 3 (*quoting Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.2003) (*quoting Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs must also satisfy Article III of the Constitution." *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 455 (3d Cir.2003) (citation omitted). As the Third Circuit has articulated, the requirements of Article III standing are as follows:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir.2006).

**B. Federal Rule of Civil Procedure 12(b)(6)**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Courts are not required to credit bald assertions or legal conclusions draped

in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429 (3d Cir.1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 6782, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly*, 550 U.S. at 555). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Young v. Speziale*, No. 07–3129, 2009 U.S. Dist. LEXIS 105236, *6–7, 2009 WL 3806296 (D.N.J. Nov. 10, 2009) (*quoting Iqbal*, 556 U.S. at 679). The movant on a Rule 12(b)(6) motion "bears the burden of showing that no claim has been presented." *Henderson v. Equable Ascent Fin.*, LLC, 2011, No. 11–3576, 2011 U.S. Dist. LEXIS 127662, at *2, 2011 WL 5429631 (D.N.J. Nov. 4, 2011) (*quoting Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005)).

### III. DISCUSSION

**A. Motions Before the Court**

**1. Defendant's Motion**

Defendant contends that Plaintiff's Complaint should be dismissed based upon the following grounds: (1) The Court lacks subject matter jurisdiction over Plaintiff's Complaint pursuant to Rule 12(b)(1) because the claims must be arbitrated under the LMRA; (2) The Court

lacks subject matter jurisdiction over Plaintiff's wrongful discharge/retaliation claim pursuant to rule 12(b)(1) because the claim is preempted by the NLRA; (3) Even if the Court has jurisdiction, which it does not, Plaintiff fails to state a viable claim under Rule 12(b)(6); (4) Plaintiff's retaliation and common law claims should be dismissed under the principles of collateral estoppel; and (5) Plaintiff's irrelevant and inflammatory allegations should be stricken from the Complaint pursuant to Rule 12(f).

### 2. Plaintiff's Opposition

Plaintiff responds to Defendant's arguments by stating: (1) Plaintiff's Counts I and II are not preempted by the LMRA; (2) Plaintiff's statutory retaliation Count is not preempted by the LMRA; and (3) Plaintiff voluntarily dismisses Count III (Breach of Contract) and Count IV (Unjust enrichment).

### B. Counts I and II

Section 301 of the Labor Management Relations Act ("LMRA") provides for complete preemption of disputes between employers, unions, and employees that are parties to a collective bargaining agreement. 29 U.S.C. § 185(a) "[T]his provision is not merely jurisdictional, but is also one that calls on the federal courts to create a uniform federal common law of collective bargaining, with the primacy of arbitral resolution of industrial disputes as its centerpiece." *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 372 (3d Cir. 1999) (*citing Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448, 455-56 (1957)). "[A] suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); (*citing Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-104 (1962)). The Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an

agreement made between the parties in a labor contract," the claim is preempted by Section 301 and must be decided pursuant to federal labor contract law. *Id.* at 220. Preemption is also appropriate where the state-based cause of action is "inextricably intertwined" with the collective bargaining agreement. *Antol v. Esposto,* 100 F.3d 1111, 1117 (3d Cir. 1996).

Defendant argues that Plaintiff's claims for unpaid wages under the NJWHL are preempted under the LMRA because such claims, at their core, require an analysis and interpretation of the CBA and, therefore, are preempted by the LMRA. Defendant states that Plaintiff's allegations that he was not paid regular or overtime wages, that Defendant failed to accurately record wages and hours, and that Defendant retaliated against him when he made complaints regarding unpaid wages allegations will necessarily require the Court to examine and interpret the CBA to determine Plaintiff's pay rate, how hours are reported and tracked, Defendant's timekeeping policies, and its policies for reporting errors in pay. Defendant cites Third Circuit case law for the proposition that Plaintiff "cannot circumvent the necessity of complying with the LMRA procedure to get a determination of his or her right to the wages claimed." *Vadino v. A. Valey Engineers,* 903 F.2d 253, 266 (3d Cir. 1990).

Defendant also cites case law for the proposition that prior to bringing suit seeking to vindicate personal rights under a collective bargaining agreement, the employee must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement. *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1537 (3d Cir. 1992) ("Under federal labor law, aggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"). Defendant argues that the extensive fact analysis and

interpretation of the CBA required to determine whether plaintiff is in fact owed any unpaid wages, Plaintiff was required to exhaust his administrative remedies by bringing his claims to the Union and pursuing it as a grievance under the CBA's procedure.

Plaintiff responds to Defendant's contention by stating that there is no dispute about the CBA, what it says, or anyone's rights therein. Instead, Plaintiff says he was not paid for hours he worked because Defendant "manipulated" the time clock and refused to pay him. Plaintiff argues that this does not require an analysis of the CBA. Plaintiff cites *Bell v. SEPTA*, for the proposition that one makes "a factual determination" of the amount of time worked, and the "legal determination" regarding whether this time is compensable under the applicable wage law, and "neither of these determinations depends on the resolution of a disputed reading of the CBA." Plaintiff states that he has no problem with any provision of the CBA, or how he is to be paid under it. Rather, Plaintiff contends, his grievance is with manipulating the time records and then as a result, being underpaid.

The Court agrees with Defendant that Plaintiff's claims for unpaid wages under the NJWHL are preempted under the LMRA because such claims, at their core, require an analysis and interpretation of the CBA and, therefore, are preempted by the CBA. Both Plaintiff and Defendant are parties to a collective bargaining agreement ("CBA"), which sets forth the comprehensive terms and conditions of Plaintiff's employment with Defendant, including his salary and grievance and arbitration procedures.[2] (ECF No. 6-2; Ex. B; CBA, Arts. VIII, XVII and XVIII). Plaintiff's allegations that he was not paid regular or overtime wages and that Defendant failed to accurately record wages and hours necessarily require the Court to examine

---

[2] In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the court may consider "evidence outside the pleadings." *Gould Elecs. Inc. v. U.S.*, 220 F. 3d 169, 176 (3d Cir. 2000).

and interpret the CBA to determine Plaintiff's pay rate, how hours are reported and tracked, Defendant's timekeeping policies and its policies for reporting errors in pay.

A state-law claim is preempted by § 301 if the claim is (1) "founded directly on rights created by collective-bargaining agreements" or (2) "substantially dependent on analysis of a collective bargaining agreement." *Caterpillar v. Williams,* 482 U.S. 386, 394 (1987); see also *Lueck,* 471 U.S. at 214, 105 S.Ct. 1904 (The question is "whether the [state-law claim] is sufficiently independent of federal contract interpretation to avoid pre-emption."). Plaintiff alleges that various provisions of the CBA require Defendant to pay Plaintiff certain wages and that Defendant failed to pay him for certain regular and overtime hours worked. (See Compl. ¶¶ 42-46, 117-22.) These core allegations of Plaintiff's Counts I and II are founded directly on rights created by the CBA, specifically Plaintiff's right to be paid in accordance with the CBA's provisions. While the Court is cognizant that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted ... [because] it would be inconsistent with congressional intent ... to preempt state rules that ... establish rights and obligations independent of a labor contract[,]" these allegations made by Plaintiff fall directly in the first category articulated by the Supreme Court in *Caterpillar . Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Plaintiff's reliance on *Bell* is misguided, as Defendant correctly notes, because the Court in that case held that the plaintiffs' FLSA claims were not arbitrable because they did not allege, nor did they claim, that they were entitled to any payments under the CBA. Here, Plaintiff has alleged that his claims rest entirely on provisions he is afforded under the CBA. (*See* Compl. ¶¶35-39; 125-129). Therefore, because Plaintiff's claims under the New Jersey Administrative Code are founded directly on rights created by the CBA, Counts I and II are dismissed due to the Court's lack of subject matter jurisdiction.

## C. Count V

Section 7 of the NLRA protects the right of employees to "assist labor organizations" and "to engage in other concerted activities." 29 U.S.C. § 157. Section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in section 7, and "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subsection." *Id.* §§ 158(a)(1), (4). If an "activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Stated alternatively, "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap v.. Hale*, 463 U.S. 491, 498 (1983). The party claiming preemption bears the burden of proof. Count V will only be preempted if it "implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA." *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir.1999).

Defendant argues that Plaintiff's retaliation claim is also preempted because it is deeply rooted in the alleged loss of rights afforded to him by the CBA. As a result, Defendant contends, the wrongful discharge claim cannot be adjudicated without interpreting the CBA and comparing the "rights, benefits and entitlements there guaranteed" with Plaintiff's position after his alleged whistle-blowing activity. Defendant asserts that there is no way to determine whether Plaintiff was indeed the victim of retaliation without first interpreting the CBA to see if Defendant acted properly or in fact deprived plaintiff of the rights he claims to have lost. Moreover, Defendant

states that Plaintiff's retaliatory claim concerns purported concerted activity and, therefore, is preempted by §§ 7 and 8 of the NLRA. Thus, Plaintiff argues, the National Labor Relations Board ("NLRB"), and not this Court, has exclusive subject matter jurisdiction over Plaintiff's wrongful discharge/retaliation claim.

Plaintiff responds by stating that Plaintiff's retaliation claim is not preempted for the same reasoning his wage claims are not, i.e., the interpretation of the CBA is not needed. In this case, plaintiff argues that he is suing Defendant under a state law which prohibits retaliatory discharge of an employee because the employee "made any complaint to his former employer …that he has not been paid wages." Plaintiff explains that he "confronted" Defendant about the "failure to compensate him for approximately forty-five hours." Then, as a "direct and proximate result of Plaintiff's confrontation, Defendant discriminated against Plaintiff by assaulting and then terminating his employment with Defendant. No part of this factual scenario requires an interpretation of any collective bargaining agreement.

This Court lacks subject matter jurisdiction over Plaintiff's retaliation claim pursuant to Federal Rules of Civil Procedure 12(b)(1) because such a claim, which concerns purported concerned activity, is preempted by the National Labor Relations Act. 29 U.S.C. § 151, *et seq.* Plaintiff alleges that Defendant wrongfully discharged him because he complained to Defendant about its conduct in withholding substantial wages from him and others similarly situated. (Compl. ¶¶ 139-40.) Such a claim "implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA." The NLRA strictly prohibits retaliation against employees for engaging in whistleblower claims brought by union employees who allege that they suffered retaliation because of their union activity. *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 453 (D.N.J.

2011). Plaintiff's claim does not stand alone and is not unrelated to the CBA. Rather, it is grounded on a violation of Plaintiff's rights, as defined in the CBA, a negotiated provision governing his employment, and, thus, invokes provisions of the NLRA, requiring administrative review by the NLRB. Therefore, because this Court lacks subject matter jurisdiction over Plaintiff's retaliation claim, because such a claim is preempted by the National Labor Relations Act. 29 U.S.C. § 151, Count V is dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Complaint under Rule 12(b)(1). Plaintiff's Complaint is dismissed with prejudice.

An appropriate Order accompanies this Opinion.

DATED: __13__ of May, 2015

_____
Jose L. Linares
U.S. District Judge